UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGED ABDULHAMEED HAMOOD ABDULLAH,<br><br>                                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security; et al.,<br><br>                                    Respondents. | Case No.:  26-cv-176-BJC-BLM<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1, 2]** |

On January 12, 2026, Maged Abdullah ("Petitioner") filed a petition for a writ of habeas corpus, ECF No. 1, along with a motion for a temporary restraining order. ECF No. 2 at 2. On January 26, 2026, Respondents filed a return, ECF No. 7, and that same day, Petitioner filed a traverse. ECF No. 8. For the reasons set forth below, the Court **GRANTS** the petition.

## I.      BACKGROUND

Petitioner is a citizen of Yemen through his parents, but he has never lived in Yemen. ECF No. 1 at 3. He was born and raised in Saudi Arabia. *Id.* However, because Saudi Arabia does not recognize citizenship based on place of birth, he has never held lawful

immigration status there.  *Id.*  In October 29, 2016, Petitioner left Saudia Arabia and entered the United States on a nonimmigrant student visa..

On June 11, 2018, Petitioner's nonimmigrant status expired when his school enrollment was terminated for failure to attend.  ECF No. 7-1 at 2.  On September 18, 2018, Petitioner was taken into Immigration and Customs Enforcement ("ICE") custody.  *Id.*  He was served with a Notice to Appear, thereby commencing immigration proceedings.  *Id.* He was released later that same day on an Order of Recognizance.  *Id.*

On February 25, 2022, Petitioner was convicted as a nonimmigrant alien in possession of a firearm and ammunition in violation of 18 U.S.C. 18 § 922 (g)(5)(B) and § 924 (a)(2), for which he was sentenced to 107 days in prison and supervised release for 12 months.  *Id.*  On February 28, 2022, Petitioner was transferred into ICE custody to continue immigration proceedings.  *Id.*  On June 9, 2022, an immigration judge ("IJ") ordered Petitioner removed to Saudi Arabia.  *Id.*  On September 7, 2022, the Consulate General of Saudi Arabia denied ICE's request for a travel document because Petitioner is not a citizen of Saudi Arabia.  *Id.*  A series of appeals occurred, and on February 15, 2024, an IJ ordered Petitioner removed to Saudi Arabia, and Yemen in the alternative, but granted withholding of removal to Yemen.  Id. at 3.  The IJ did not grant withholding of removal to Saudi Arabia.  *Id.*  Both DHS and Petitioner waived appeal.  *Id.*  In June 2024, Petitioner was released on an order of supervision.  ECF No. 1. At 6.

On December 18, 2025, ICE re-detained Petitioner.  *Id.*  Later that day, he received an informal interview.  *Id.*  Around 9 p.m. that same evening, Petitioner received a "Notice of Revocation of Release," stating:

> This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.

> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. ICE will

26-cv-176-BJC-BLM

attempt removal to Saudi Arabia or removal to a third country.

Based on the above, and pursuant to 8 C.F.R. § 241.13(i)(2), your release on an order of supervision will be revoked today and you will be taken into ICE custody. You will be afforded an informal interview today at which you will be given an opportunity to respond to the reasons for the revocation.

ECF No. 1 at 6-7. Petitioner alleges that he asked to speak with a lawyer before he signed the notice. *Id.* at 7. However, Petitioner claims that the officer who gave him the notice "would not wait to let [him] to talk [his] lawyer or have [his] lawyer come to the office." *Id.*

## II.   <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III.   <u>DISCUSSION</u>

### A.   <u>Jurisdiction under 8 U.S.C. § 1252(g)</u>

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Ninth Circuit has made clear, however, that § 1252(g) must be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings,

26-cv-176-BJC-BLM

*adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, at *6, *14–15 (9th Cir. Aug. 27, 2025) (emphasis in original).  Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *18.  Specifically, § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1032 (9th Cir. 1998).  "[The plaintiffs'] objective was not to obtain judicial review of the merits of their . . . proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052.

The Court concludes that it has jurisdiction.  Petitioner is not challenging Respondents' decision to execute a removal order, which would bar this Court's review.  Instead, he challenges the legality of his detention based on alleged violations of statutory, regulatory, and constitutional duties.  Such claims fall squarely within the Court's habeas authority. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (interpreting 1252(g) to allow jurisdiction over detention challenges).

## B.      Petitioner's Continued Detention Under 8 U.S.C. § 1231

Section 1231 governs the arrest and detention of noncitizens subject to a final removal order. *See* 8 U.S.C. § 1231.  It directs the Attorney General to effectuate removal "within a period of 90 days," known as the "removal period," during which detention is authorized. § 1231(a)(1)–(2).  In *Zadvydas*, the Supreme Court clarified that detention beyond the removal period is presumptively lawful for up to six months; after that, a noncitizen may make a prima facie case for relief by sharing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to "the Government [to] respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

The Court finds that Petitioner has satisfied his burden under *Zadvydas*.  Petitioner was ordered removed in June 2022, ECF No. 7-1 at 2, and the six-month presumptive

detention period expired long ago. Petitioner has presented evidence that removal to Saudia Arabia or Yemen is uncertain. No travel documents have been obtained at this time. *See id.* at 3. While Respondent contends that detention remains lawful because it is reasonably related to effectuating removal, the Court finds that mere good-faith efforts is insufficient under *Zadvydas*. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1081–82 (9th Cir. 2006) (holding that the government lacked authority to detain an individual indefinitely under § 1231 where removal was not reasonably foreseeable despite ongoing diplomatic efforts). Continued detention must be justified by a significant likelihood of removal within a reasonably foreseeable period, and Respondents have failed to meet that standard.

## C.     Revocation of Petitioner's Supervision Under 8 C.F.R. §§ 241.4(l) and 241.13(i)

A federal agency must follow its own regulations and procedures. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974). The revocation of release of noncitizens subject to a final removal order is governed by 8 C.F.R. §§ 241.4, 241.13. Upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4, 241.13; *see also Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) (Listing cases that held "§ 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2).").

Petitioner was provided with a Notice of Revocation of Release on the day he was taken into custody, which informed him that his supervision was revoked based upon "changed circumstances in [his] case" and that ICE determined it can "expeditiously" remove Petitioner form the United States. ECF No. 1 at 6-7. This vague language did not include what circumstances changed that allowed ICE to be able to remove Petitioner now, when they were unable to do so following his order of removal in 2022.

26-cv-176-BJC-BLM

Even assuming the notice sufficiently provided Petitioner with the reasons for the revocation as required, the interview given the same day failed to meet the requirements. Conducting the interview on the same day Petitioner was detained without any advance notice and no opportunity to obtain documents or provide a thorough written response denies Petitioner the ability to meaningfully respond to the reasons for his revocation. *See Hagos v. Noem*, 26-CV-150-JES-DEB, 2026 WL 202873, at *3 (S.D. Cal. Jan. 27, 2026). The Court finds Respondents failed to comply with statutory process and violated Petitioner's due process rights when revoking Petitioner's release.

**D.     Due Process Constraints on ICE's Third-Country Removal Policy**

Due process supports Petitioner's request for injunctive relief related to ICE's policy regarding third country removals presented in the memorandum dated July 9, 2025. ECF No. 1 at 24. Several courts within the Ninth Circuit have held the policies provided in the ICE memorandum violate due process. *Lapshin v. Bondi*, No. C25-2245-KKE, 2026 WL 71407, at *5 (W.D. Wash. Jan. 9, 2026); *Elshourbagy v. Bondi*, No. 2:25-CV-02432-TL, 2025 WL 3718993, at *8 (W.D. Wash. Dec. 23, 2025); *Escobar v. Chestnut*, No. 1:25-CV-01801-DJC-EFB, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025); *Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025); *Vishal v. Chestnut*, __ F.Supp.3d __, 2025 WL 3511815, at *6 (E.D. Cal. Dec. 8, 2025); *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *6 (W.D. Wash. Nov. 17, 2025); *Vu v. Noem*, No. 1:25-CV-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025); *Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *6 (C.D. Cal. Sept. 26, 2025).

This Court agrees. The memorandum suggests removal to a third country may occur without an opportunity to be heard if the United States receives and believes diplomatic assurances that there will be no persecution or torture. According to the Ninth Circuit, "last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016). Additionally, when the third country does not provide

such assurances, ERO "will not affirmatively ask whether the alien is afraid of being removed to that country." However, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum. . .and for withholding of deportation to the country to which they will be deported violates" regulations and due process. *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (*citing Kossov v. INS*, 132 F.3d 405, 408–09 (7th Cir.1998)).

## IV.   ORDERS

Upon consideration of the petition for writ of habeas corpus, ECF No. 1, and for good cause shown, it is hereby **ORDERED** that:

1. The petition for writ of habeas corpus is **GRANTED**.

2. Respondents shall immediately release Petitioner under the previously determined conditions.

3. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. 1231 until they have obtained valid travel documents necessary for Petitioner's removal.

4. Respondents are further **ENJOINED** from re-detaining Petitioner unless and until they follow the procedural safeguards set forth in 8 C.F.R. §§ 241.4; 241.13.

5. The petition is **DENIED** as to the remaining requests for relief.

6. Petitioner's Motion for TRO, ECF No. 2, is **DENIED** as moot.

7. The Clerk of the Court shall close the matter.

**IT IS SO ORDERED.**

Dated:  February 27, 2026

_Bryan Cheeks_

Honorable Benjamin J. Cheeks
United States District Judge

26-cv-176-BJC-BLM